MOTORS INSURANCE CORPORATION, a corporation, Plaintiff in Error,

v.

Mack FREEMAN, Defendant in Error.

No. 37011.

Supreme Court of Oklahoma.

Sept. 18, 1956.

Rehearing Denied Nov. 20, 1956.

Application for Leave to File Second Petition for Rehearing Denied Dec. 11, 1956.

McClelland, Bailey & McClelland, Oklahoma City, W. B. Edwards, Seminole, for plaintiff in error.

Frank Seay, Seminole, for defendant in error.

JACKSON, Justice.

This action was brought by plaintiff, Mack Freeman, against defendant, Motors Insurance Corporation, to recover under a fire insurance policy for the loss by fire of a Buick automobile which was covered by the policy.

Trial to the court resulted in a judgment for plaintiff, and defendant appeals.

As grounds for reversal, it is first urged by defendant that, under the evidence, the defendant is relieved of liability on the policy because of plaintiff's failure to disclose the existence of a chattel mortgage against the automobile in violation of express terms of the policy which provided that the policy would not be in force while the automobile was subject to any mortgage not specifically declared and described in the policy.

It is admitted herein that defendant's agent had full information concerning the mortgage involved and the decisive question raised by defendant's contention is whether the knowledge of the agent is imputed to the defendant.

The material facts touching upon this issue are not in dispute. Plaintiff purchased the insured property from Frank Harber Buick, Inc., an automobile dealer, and in payment therefor traded in another automobile as a down payment and executed two promissory notes, one for $1,817.76 and the other for $1,260. Each note was se-

cured by a separate chattel mortgage to the dealer.

. The evidence further showed that one W. S. Easterling was soliciting agent for the defendant insurance company, and at the same time was employed by Frank Harber Buick, Inc. as its office manager. As office manager for the automobile dealer, Easterling had drawn the mortgage papers involved in this transaction and knew all the details concerning the purchase of the automobile, including the amount of the down payment, the promissory notes and the chattel mortgages. As agent for the defendant insurance company, Easterling had prepared, upon the company's printed form, the application for insurance upon which the policy was issued. The application as filled out by the agent showed only one mortgage in the amount of $1,817.76. It did not show that there was another mortgage in the amount of $1,260.

A witness for defendant testified that he was an underwriter for the defendant company and among his duties was that of passing upon applications for insurance; that the application for insurance involved here was examined and accepted by the witness; that he would not have approved the application, at least without further investigation, if the application had disclosed the truth about the $1,260 mortgage.

There was no evidence tending to prove that the plaintiff had concealed any information from Easterling; that he had colluded with Easterling, or that he had any reason to believe that Easterling would not disclose the required information to his principal.

It is conceded by defendant that, under the general rule, knowledge of an agent obtained within the scope of his authority is ordinarily imputed to his principal. But it is argued that the evidence in this case shows that Easterling, in concealing material information about the mortgage, was acting in his own interest and in the interest of Frank Harber Buick, Inc. to promote the sale of the automobile and was acting adversely to the interest of this defendant.

Therefore, it is concluded, this case comes within a recognized exception to the general rule to the effect that, "The knowledge of an agent is not imputed to his principal if the circumstances are such as to raise a presumption that the agent would not communicate such knowledge to the principal."

In support of its contention, defendant invites our attention to the cases of Aetna Casualty & Surety Co. v. Local Bldg. & Loan Ass'n, 162 Okl. 141, 19 P.2d 612, 613, 86 A.L.R. 526; and Allen & Scott, Inc., v. Stahl, 181 Okl. 527, 72 P.2d 204.

A review of the cited cases reveals that they are not in point with the facts in the instant case and the rules therein announced are not controlling here.

The rule which is controlling under the facts in this case was announced by this court in the case of National Life & Accident Ins. Co. v. Hearn, 205 Okl. 661, 240 P.2d 83, wherein the court said in the first paragraph of the syllabus:

"In the absence of fraud or collusion between the soliciting agent and the applicant, where the applicant answers questions contained in an application for a policy of insurance, fully and without withholding material facts, and the agent does not correctly write such information in answer to the questions propounded, such agent is acting for the insurance company and not as agent of the applicant. Knowledge of material facts gained by the insurance company's soliciting agent is imputable to the company, and it is bound thereby."

See also Atlas Life Ins. Co. v. Sullivan, 172 Okl. 595, 52 P.2d 28.

We hold that information obtained by the agent of the company when writing the application for insurance is imputable to the company, and it is bound thereby, and an insurance company cannot escape liability on a policy in such case by showing that its agent did not correctly disclose such information, even though the agent, in the concealment, may have been serving some personal interest of his own, in the absence of proof that the applicant knew,

or should have known, that the company was being deceived.

A further proposition urged by defendant involves an issue of fact concerning the defense of wilful destruction of the insured property. There was conflicting testimony regarding defendant's claim that plaintiff had wilfully burned the automobile. We have examined the record and find that the judgment of the court resolving this issue in favor of plaintiff is amply supported by the evidence and it will not, therefore, be disturbed on appeal.

■ Judgment affirmed.

JOHNSON, C. J., WILLIAMS, V. C. J., and CORN, DAVISON and BLACKBIRD, JJ., concur.

HALLEY, J., dissents.

HALLEY, Justice (dissenting).

The evidence in this case is overwhelming that the plaintiff deliberately burned his automobile in order to collect the insurance over and above the mortgages on the car.

The majority opinion has overlooked both the law and the facts applicable to this case. This man, Easterling, not only was acting in a dual capacity but he represented three interested parties in this matter. He was office manager for the Frank Harber Buick, Inc. He was the agent for Mack Freeman. He wrote insurance for the defendant. I quote from Mack Freeman's testimony on cross-examination:

"Q. You say you have never seen that policy? A. No.

"Q. Where has that policy been since it was executed? Did Mr. Harber have it—Harber Buick Company? Or Mr. Easterling? A. I imagine it was with my papers.

"Q. The only time you have ever seen the policy, it was in the possession of Mr. Easterling, or Harber Buick Company? A. Yes.

"Q. Are you acting here for them in bringing this lawsuit or are you acting for yourself? A. I am acting for myself.

"Q. You are acting for them to the extent of these two mortgages, aren't you? A. It's included.

"Q. That's included. You say you never saw the application? A. No, sir.

"Q. You did understand, however, that you would have insurance on your automobile? A. Well, they said it would be covered. I didn't know with who, or how, or under what conditions. They said it would be covered.

"Q. That was part of the deal you made there with them, that you would have insurance? A. That was their protection.

"Q. It is their protection, Yes, I grant you that. That's one of the points I have in this lawsuit; but it was part of your deal that you were to have insurance, and it would be charged into the deal and you'd pay for it? A. Yes, sir.

"Q. Under those circumstances, it was all right with you for Mr. Easterling to sign your name to this application here? A. Sure.

"Q. You say, 'Sure, that was all right.' He represented you, then, and acted for you in making this application and obtaining the insurance?

"Q. Is that correct? A. To cover the car.

"Q. He was acting for you in making this application to obtain this insurance. A. Yes, sir."

(Objections, exceptions and colloquy between counsel and court and counsel have been omitted)

Easterling represented two entities whose interests to that of the insurance company were adverse. Certainly Frank Harber Buick, Inc. was interested in having the car mortgaged for at least the amount of their mortgages and Easterling knew that if he revealed the fact that there were

two mortgages on the car which totaled more than three thousand dollars the insurance company would not accept the application. Easterling was Freeman's agent in signing Freeman's name to the application.

The law is well settled that as a general rule the same person cannot act as agent for the insurer and the insured without knowledge and consent of both and in cases where dual agency is permitted the agent cannot represent conflicting interests unless he acts in entire good faith and with due authority from both principals.

This Court said in the case of Great American Ins. Co. v. Farmers' Warehouse Co., 91 Okl. 118, 217 P. 208:

> "A man cannot be the agent of both parties to a transaction; and, where the agent of an insurance company writes a fire policy covering property of a corporation in which he is a stockholder, director, and secretary and treasurer, without the knowledge or consent of the insurance company, such policy is void under the rule that a man cannot serve two masters."

There is nothing in this action to make it an exception to the general rule. We cannot imagine a case which illustrates more forcibly why one should not be permitted to represent adverse interests than this one which arises in the highly competitive automobile business. Easterling naturally was greatly concerned in consummating the sale to Freeman for the automobile company's profit. The rule is as it is in these cases because the weakness of human nature has been taken cognizance of. Here Easterling in his desire to help the automobile firm failed to reveal to the insurance company, as he was honor bound to do, that there were two mortgages on the car. He was also acting for the insured when he signed Freeman's name to the application and making it possible for Freeman to get insurance and in an amount which he would not have gotten had Easterling told the truth.

This case is distinguishable from that of Home Insurance Co. of New York v. Southern Motor Coach Corp., 171 Okl. 94, 41 P.2d 870, because Easterling had a direct pecuniary interest in the subject matter and occupied a position of fiduciary relationship. The automobile company had the greatest interest as between the plaintiff and it. Their risk was the greatest and Easterling saw that it was being protected. Attention is called to 44 C.J.S., Insurance, §§ 141 and 156; the authorities cited thereunder; 29 Am.Jur., Insurance, section 92 and Ramspeck v. Pattillo, 104 Ga. 772, 30 S.E. 962, 42 L.R.A. 197.

I submit that it would be shocking to permit recovery in cases of this kind. There is too much likelihood for fraud. I cannot but dissent.