McBRIDE et al. v. BRIDGES.

No. 33561. Jan. 31, 1950.

Rehearing Denied March 14, 1950.

*215 P. 2d 830.*

Wheeler & Wheeler, of Tulsa, for plaintiffs in error.

Rosenstein, Fist & Shidler and M. C. Spradling, all of Tulsa, for defendant in error.

JOHNSON, J. Plaintiffs seek by this action to recover the value of a plat of land out of 60 acres in which they formerly had a one-half interest. Anna Edna McBride is the wife of Ray B. McBride and Margaret E. McBride is his mother.

The action is based on the following fact situation: Prior to the 17th day of June, 1938, plaintiffs were the owners of a one-half interest in the 60 acres involved. On that date it and the one-half interest of C. H. Terwilleger was sold for taxes. On the 28th day of October, 1938, the county commissioners of Tulsa county executed a deed to the entire 60 acres to W. H. Walker. On July 16, 1940, W. H. Walker deeded the property by quitclaim deed to H. E. Bridges. On the 21st day of April, 1941, H. E. Bridges and Ray B. McBride, acting for and on behalf of himself and the other plaintiffs, executed the following contract:

"This Agreement Made and Entered into this 21st day of April, 1941, by and between Ray B. McBride, party of the first part, and H. E. Bridges, party of the second part,

"Witnesseth:

"Whereas, the said Ray B. McBride is the owner of an undivided one-half (1/2) interest in and to the following described land situated in Tulsa County, Oklahoma, to-wit:

"The Northwest Quarter (NW-1/4) of the Northwest Quarter (NW-1/4) of the West Half (W-1/2) of the Northeast Quarter (NE-1/4) of the Northwest Quarter (NW-1/4) of Section Thirty-five (35) in Township Twenty (20) North, Range Thirteen (13) East which said land is subject to a mortgage in favor of the Commissioners of the Land Office of the State of Oklahoma, which is now in the process of foreclosure in the District Court of Tulsa County, Oklahoma, and is further subject to certain unpaid general taxes and special assessments and said second party desires to undertake to clear said title so that the same will be merchantable and free and clear of all mortgages, liens, taxes and other incumbrances and has requested and demanded of said first party a quit-claim deed to any right or interest

er equity of redemption that he may have therein.

"Now, Therefore, it is agreed between said parties as follows: That when and if said second party shall procure a good and merchantable title to the land above described, free and clear of all mortgages, liens, taxes, special assessments, tax sales or other incumbrances of whatsoever nature and kind and will then convey or cause to be conveyed to said Ray B. McBride a good and merchantable, clear and unimcumbered title to a tract one hundred seventy-five (175) feet square in the Northwest (NW) corner of the above described land facing one hundred seventy-five (175) feet on the North (N) line of said tract and one hundred seventy-five (175) feet on the West (W) line of said tract, then the said Ray B. McBride will execute and deliver to said H. E. Bridges or to his nominee a quitclaim deed to all his right, title, interest, estate and equity or redemption in and to all the remainder of the above described land.

"It is Understood that this contract shall remain in force and effect for a period of ninety (90) days and if within that time such second party has not procured and tendered to first party the conveyance herein provided for, then the rights of both parties hereunder shall be terminated.

"In Witness Whereof we have hereunto set our hands this 24th day of April, 1941.

"/s/ Ray B. McBride
"/s/ H. E. Bridges."

On the 2nd day of May, 1941, H. E. Bridges brought an action in the district court of Tulsa county against the plaintiffs and C. H. Terwilleger, and others not necessary to mention. Terwilleger defended, and on the 3rd day of October, 1941, judgment was rendered against all of the defendants quieting title in Bridges. Terwilleger appealed, and in Terwilleger v. Bridges, 192 Okla. 642, 138 P. 2d 79, the cause was reversed, the court holding the proceeding as to Terwilleger void. On June 25, 1943, the mandate was spread of record and the case was set for trial in May of 1944. On the 16th day of September, 1944, judgment was rendered for Bridges quieting title to the entire 60 acres. On the 6th day of June, 1946, Bridges conveyed the entire 60 acres to Eugene J. McGuiness. On January 24, 1947, plaintiffs filed the present action.

The opinion in Terwilleger v. Bridges, supra, was filed November 17, 1942. It was pending on petition for rehearing until June 15, 1943. At all times mentioned above there was a mortgage on the premises in the sum of $10,000 to the School Land Commission. This mortgage was assigned to Bridges.

After the opinion was rendered on the 17th day of November, 1942, and before the case was again set for trial in May of 1944, Bridges and Ray B. McBride had a conversation in which Bridges told McBride that Bridges could not perfect title, and that if McBride wished he could pay his part of the indebtedness and acquire his one-half interest. Bridges says McBride told him there was too much financial responsibility involved and that McBride was not interested. Bridges testified that at the time he was undecided as to whether he would go on with the litigation with the idea of perfecting title in himself and stated to McBride that he had too much involved in it to continue. At all times after this conversation the court records were available to plaintiffs. Ray McBride testified that he was advised by counsel as to how to proceed. Sometime after the conversation above referred to, Ray McBride withdrew from the bank, in which he had deposited them, a copy of the contract and a quitclaim deed to the premises made out to Bridges. Under date of May 10, 1944, Ray McBride received a letter from the attorney for Bridges stating that the case was set for trial. This letter also stated that the contract of June 21, 1941, was at an end.

Although this court had definitely stated in its opinion in Terwilleger v.

Bridges, supra, that Terwilleger could tender the delinquent taxes and redeem, Terwilleger abandoned all such rights, whereupon Bridges again obtained his judgment quieting title. At no time after the reversal of the case of Terwilleger v. Bridges, supra, did Ray McBride make any demand on Bridges under the contract prior to the filing of this suit.

Plaintiffs assert and the trial court found that plaintiffs' action is based on unjust enrichment. Defendant's theory was that any action was barred by the applicable section of the statute of limitations. 12 O. S. 1941 §95. We agree with the trial court that under the pleadings any cause of action accrued on the date judgment was entered the second time for Bridges. We also agree that plaintiffs' theory of a right to recover on the ground of unjust enrichment must fail. Ray McBride testified that after the case was reversed he talked to his attorney and was advised that he could not go back into the case for the reason that the judgment was final as to him. As aptly stated by the trial court, either because of this advice or because he did not want to assume the financial responsibility, he did not attempt to make any appearance after he knew fully of the reversal of the case and its resetting for trial. He cannot charge Bridges with this failure. It is interesting to note that after the expense of defending and the favorable reversal, Terwilleger must have reached the conclusion that the financial responsibility incident to redemption was too great for he made no attempt to appear in the second trial.

After the opinion of this court, the parties to the contract of April 24, 1941, mutually rescinded it. Plaintiffs, as aptly stated by the trial judge, were restored to their full right to defend, and Bridges did nothing to prevent their complete defense, and there was no consideration for a contract thereafter. The fact that plaintiffs did not defend is not due to any act of Bridges. Bridges thereafter may have been unexpectedly enriched, but he was not unjustly enriched at the expense of plaintiffs. It may be true that what the parties anticipated did not occur, but the action of Terwilleger was as uncertain and unexpected to Bridges as to the McBrides. Unjust enrichment cannot be based on this set of circumstances. In 46 Am. Jur. page 99, it is stated in part:

"Unjust enrichment arises not only where an expenditure by one person adds to the property of another, but also where the expenditure saves the other from expense or loss. One is not unjustly enriched, however, by retaining benefits involuntarily acquired which law and equity give him absolutely without any obligation on his part to make restitution."

Plaintiffs have cited several cases, among them, First National Bank v. Matlock, 99 Okla. 150, 226 P. 328, and Helm v. Mickleson, 66 Okla. 290, 170 P. 704. We have carefully analyzed the fact situations in each of these cases, and the rule announced, and they are readily distinguishable from the case at bar. Several cases are cited by the plaintiffs involving fraud and the right to bring an action two years after the discovery of fraud. It is difficult to see what Bridges could have done that would have informed plaintiffs any more fully on their rights. Bridges notified plaintiffs of all the proceedings after the filing of the opinion November 17, 1942, including the notification of the time of the trial. There was no fraud and concealment of any kind with which Bridges is chargeable. This is a case of equitable cognizance as conceded by the parties. In Gaines v. Union Central Life Ins. Co., 191 Okla. 246, 129 P. 2d 79, it is stated:

"In a case of equitable cognizance the judgment of the trial court will not be disturbed on appeal unless the same is clearly against the weight of the evidence."

The trial court reached the correct conclusion in entering judgment for the defendant.

Judgment affirmed.

DAVISON, C.J., and WELCH, CORN, GIBSON, LUTTRELL, HALLEY, and O'NEAL, JJ., concur.